IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ASHLEY BIERMAN, | ) | CASE NO. |
| 725 Johnson Court | ) | |
| Cleveland, Ohio 44113 | ) | JUDGE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | COMPLAINT |
| vs. | ) | |
| | ) | (*JURY DEMAND ENDORSED* |
| AFFINITY PHYSICIAN NETWORK LLC, | ) | *HEREON*) |
| c/o Jerry Sloan, Statutory Agent | ) | |
| 24803 Detroit Road, Suite 5 | ) | |
| Westlake, Ohio 44145 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AFFINITY WHOLE HEALTH LLC, | ) | |
| c/o Jerry Sloan, Statutory Agent | ) | |
| 3311 Richmond Road | ) | |
| Beachwood, Ohio 44122 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Core Pharmacy LLC, | ) | |
| c/o ACFB Incorporated | ) | |
| 200 Public Square, Suite 2300 | ) | |
| Cleveland Ohio 44114 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JERRY SLOAN, | ) | |
| 3311 Richmond Road | ) | |
| Beachwood, Ohio 44122 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRIAN ZEID, | ) | |
| 3311 Richmond Road | ) | |
| Beachwood, Ohio 44122 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, Ashley Bierman ("Plaintiff), for her Complaint against the defendants, Affinity Physician Network LLC ("APN"), Affinity Whole Health LLC ("AWH"), Core Pharmacy LLC ("Core"), Jerry Sloan ("Sloan"), and Brian Zeid ("Zeid") (collectively "Defendants"), states and avers the following:

## PARTIES

1.      Plaintiff is a resident of the City of Cleveland, County of Cuyahoga, State of Ohio.

2.      Plaintiff is a female who was born on February 22, 1997.

3.      Plaintiff is a former employee of Defendants.

4.      Plaintiff brings this action against Defendants: (1) to recover unpaid overtime compensation under provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. (the "FLSA"); (2) to remedy violations of the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.01 *et seq.* (the "OMFWSA"); (3) to recover unpaid wages pursuant to the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15, and for nonpayment by Defendants of her final paycheck; (4) to recover damages for gender discrimination and sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, § 701, et seq. (the "CRA"), as amended, 42 U.S.C.A. § 2000e-2, et seq.; (5) to recover damages for retaliation in violation of the CRA, as amended, 42 U.S.C.A. § 2000e-2, et seq., and in violation of Ohio Rev. Code § 4112.02(I) and (6) to recover damages for hostile work environment sexual harassment in violation of Ohio Rev. Code § 4112.01 et seq. and Ohio Admin. Code § 4112-5-05(J)(1)(c).

5.     APN is an active Ohio for-profit domestic limited liability company registered with the Ohio Secretary of State that does business in the Northern District of Ohio and, at all relevant times, has been an "employer" as defined under the FLSA, the OMFWSA, the OPPA, and Ohio Rev. Code § 4112.02(A)(2).

6.     AWH is an active Ohio for-profit domestic limited liability company registered with the Ohio Secretary of State that does business in the Northern District of Ohio and, at all relevant times, has been an "employer" as defined under the FLSA, the OMFWSA, the OPPA, and Ohio Rev. Code § 4112.02(A)(2).

7.     Core is an active Ohio for-profit domestic limited liability company registered with the Ohio Secretary of State that does business in the Northern District of Ohio and, at all relevant times, has been an "employer" as defined under the FLSA, the OMFWSA, the OPPA, and Ohio Rev. Code § 4112.02(A)(2).

8.     Upon information and belief Sloan and Zeid are the owners of APN, AWH, and Core, and, at all relevant times, have been "employers" as defined under the FLSA, the OMFWSA, the OPPA, and Ohio Rev. Code § 4112.02(A)(2).

9.     At all times relevant, Sloan and Zeid were individuals who managed and supervised Plaintiff and the employees and business operations of APN, AWH, and Core, and/or who acted directly or indirectly as agents in the interests of APN, AWH, and Core.

10.     In their capacities as Plaintiff's employers, and as the owners, managers, and supervisors of APN, AWH, and Core, Sloan and Zeid, took tangible employment actions, which were adverse to Plaintiff, and which resulted in a significant change in Plaintiff's employment status. Among other things, and not by means of limitation, Sloan and Zeid: (1) failed to promote Plaintiff; (2) failed to hire Plaintiff for a managerial position for which she was qualified, and

3

instead hired a male who was less qualified than Plaintiff; (3) failed to pay Plaintiff wages and benefits commensurate with those paid to males within APN, AWH, and/or Core who worked less hours and had less responsibilities than Plaintiff; (4) failed to pay Plaintiff wages and overtime in violation of the FLSA, the OMFWSA, and the OPPA; (5) made discriminatory, hurtful, and disrespectful comments about Plaintiff's gender and young age; (6) failed to adequately address and remedy discriminatory, harassing, hurtful, and disrespectful comments and actions directed at Plaintiff from other male employees of APN, AWH, and/or Core; and (7) ultimately fired Plaintiff.

11.     At all relevant times, Defendants engaged in interstate commerce, and produced goods for interstate commerce, and/or handled, sold, or worked on goods or materials that have been moved in or produced for interstate commerce. In particular, and not by means of limitation, Defendants marketed, produced, and sold goods and services, both within and outside of Ohio, which included Bioidentical Hormone Replacement Therapy, Anti-Aging Therapy, and Injectable Vitamins and Supplements.

12.     Defendants' gross annual sales made or business done has been $500,000.00 or greater per year at all relevant times.

13.     At all relevant times, APN, AWH, and/or Core were enterprises within the meaning of 29 U.S.C. §§ 203(r) and 203(s)(1).

14.     At all relevant times, Plaintiff was engaged in commerce or in the production of goods for commerce, and/or was employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of 29 U.S.C. § 207.

15.     At all relevant times, Plaintiff was an employee of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1) and (g), the OMFWSA, Ohio Rev. Code § 4111.03(D)(3), and the OPPA, Ohio Rev. Code § 4113.15.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the laws of the United States, and pursuant to the FLSA, 29 U.S.C. § 216(b), and the CRA, as amended, 42 U.S.C.A. § 2000e, et seq.

17.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

18.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) as: (1) APN, AWH, and Core all do business in Cuyahoga County, Ohio, and these entities also maintain offices and headquarters located in the City of Beachwood in Cuyahoga County, Ohio; (2) Sloan and Zeid also reside in and/or do business in Cuyahoga County, Ohio; and (3) the causes of action alleged herein, and the material events and facts in which they are based, all arose from Defendants' activities in Cuyahoga County, Ohio.

19.     Plaintiff filed formal Charges of Discrimination against Defendants with both the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") in Agency Charge Nos. 532-2021-02017 and 532-2021-02019.

20.     On July 28, 2021, the EEOC signed Notice of Right to Sue letters regarding both of Plaintiff's Charges of Discrimination against Defendants.

21.     Plaintiff received the Notice of Right to Sue letters from the EEOC, in accordance with 42 U.S.C. § 2000e-5(f)(1), and said letters are attached hereto and incorporated herein as Exhibits 1 and 2.

22.     Plaintiff has properly exhausted her administrative remedies, under both Ohio and Federal law, prior to filing this Complaint.

23.     Plaintiff has filed this Complaint within 90 days of the issuance of the EEOC's Notice of Right to Sue letters.

## COUNT ONE

## Violation of the FLSA

24.     Plaintiff incorporates the foregoing paragraphs as if fully rewritten herein.

25.     Defendants hold themselves out to the public as Ohio health care experts dedicated to hormone replacement therapy for men and women.

25.     Plaintiff was initially hired by Defendants, and paid at the rate of $12.00 an hour, to work as a "front desk administrator" for AWH, beginning in July of 2017 and continuing through August 2017.

26.     As the "front desk administrator" for AWH, Plaintiff reported her hours directly to Sloan, and she was paid via check through AWH. In this position, Plaintiff worked from 8:30 AM until 5:30 PM on Mondays through Fridays, and from 10 AM to 3 PM on Saturdays, for a total of 50 hours a week, but she was paid no overtime by Defendants.

27.     In August of 2017, Plaintiff was hired by Defendants, and paid at the rate of $15.00 an hour, to work as a part-time assistant for APN.

28.     Plaintiff continued working as a part-time assistant for APN until May 2019, and during this time her hours were clocked through a payroll service (i.e. ADP) and she was paid via direct deposit.

6

29.     In May of 2019, Defendants made Plaintiff a full-time employee, with the title of "Director of APN" and, for the first time, Defendants paid Plaintiff on a salaried, as opposed to hourly, basis.

30.     Plaintiff continued to be employed as "Director of APN" until she was fired by Defendants on or around March 5, 2021.

31.     Throughout the time Plaintiff was employed by Defendants, and regardless of her job titles with her putative employers AWH and APN or whether she worked part-time or full-time, Plaintiff was managed and supervised by Sloan and Zeid.

32.     Throughout the time Plaintiff was employed by Defendants, and regardless of her job titles with her putative employers AWH and APN or whether she worked part-time or full-time, Sloan and Zeid directed and controlled Plaintiff's activities, and Plaintiff had no management authority. Plaintiff was also required to obtain approval from either Sloan and/or Zeid with respect to all matters of significance related to the management or general business operations of APN, AWH, and Core.

33.     Throughout the time Plaintiff was employed by Defendants, and regardless of her job titles with her putative employers AWH and APN or whether she worked part-time or full-time, Plaintiff was not permitted to exercise her independent discretion and/or independent judgment with respect to matters of significance related to the management or general business operations of APN, AWH, and/or Core, including, but not limited to, matters concerning the purchasing of goods or services, and the hiring, discipline, and firing of APN, AWH, and/or Core employees.

34.     Plaintiff seeks to recover unpaid overtime compensation and other benefits of employment to which she is entitled under the FLSA.

35.     At all times relevant, Plaintiff was a non-exempt employee, as defined under the FSLA.

36.     As a non-exempt employee under the FLSA, Plaintiff was entitled to one and one-half (1.5) times her regular rate of pay for all of the overtime hours she worked over 40 hours each workweek.

37.     As a non-exempt employee under the FLSA, Defendants were required to compensate Plaintiff for her work on an hourly basis.

38.     As a non-exempt employee under the FLSA, Defendants were also required to compensate Plaintiff at one and one-half (1.5) times her regular rate of pay for all of the overtime hours she worked over 40 hours each workweek.

39.     On average, during the time Plaintiff was employed by Defendants as "Director of APN" she typically worked 54 hours each week. Plaintiff's typical work week consisted of working from 9:30 AM to 6:30 PM on Mondays through Fridays, 10:00 AM to 3:00 PM on Saturdays, and 12:00 PM to 2:00 PM on Sundays.

40.     Some weeks, however, as "Director of APN", Plaintiff worked 60-65 hours a week, or more, because she was often required by Sloan and/or Zeid to cover other employees' shifts and job functions.

41.     During the time she was employed by Defendants, Plaintiff's putative employers were AWH and APN, and AWH and APN generated and issued payroll records and W-2 wage and tax statements for Plaintiff, and Defendants also maintained other employment records and time records for Plaintiff.

42.     During the time she was employed by Defendants as "Director of APN", Plaintiff was also required by Sloan and Zeid, in addition to performing work for APN, to perform work and render services on behalf of AWH and Core.

43.     During the time she was employed by Defendants as "Director of APN" between May 2019 and March 5, 2021, Plaintiff was never paid overtime even though she regularly worked at least 54 hours a week, and often times more than 54 hours a week, during that time.

44.     During the time she was employed by Defendants as "Director of APN" between May 2019 and March 5, 2021, and notwithstanding her job title, Plaintiff's primary job duties and responsibilities revolved around scheduling training sessions between in-house physicians and medical prescribers, scheduling patient visits, processing orders with pharmacies for patients, assisting with order processing questions and issues, covering for other employees of APN, AWH, and Core during their time-off or away from work.

45.     At all times relevant, Sloan and Zeid had the sole and exclusive authority to hire, fire, and discipline Plaintiff and other employees of APN, AWH, and Core, and, in fact, they utilized their authority to do so.

46.     Sloan and Zeid also controlled the manner in which Plaintiff and other employees of APN, AWH, and Core performed their work, including without limitation, the hours they worked, the days they worked, how they performed their work, and the rules and policies that they were required to follow.

47.     Defendants also controlled the manner in which Plaintiff and other employees of APN, AWH, and Core were paid, including, without limitation, the rates and methods of pay, and when they were paid.

48.     As a result of Defendants' practices and policies, and for at least three years prior to the filing of this case and continuing, Plaintiff was not compensated for all of the time she worked, including all of the overtime hours she worked over 40 each workweek.

49. Defendants failed to pay Plaintiff at a rate of one and one-half (1.5) times her regular rate of pay for the overtime hours she worked as required by the FLSA.

50.     Defendants knew that Plaintiff performed work that required proper payment of overtime compensation.

51.     Defendants were aware of their unlawful payment practices, and willfully and recklessly chose to disregard the consequences of their actions.

52.     Defendant's knowledge of their unlawful payment practices, and of their willful and reckless choice to disregard the consequences of their actions, is further evidenced by the fact that Defendants have also failed to pay other employees overtime hours as required by the FLSA including, but not limited to, former employee Christine Kovach ("Kovach").

53.     Kovach has also filed a lawsuit against AWH, Sloan, and Zeid alleging that they violated the FLSA, the OMFWSA, and the OPPA by, among other things, failing to properly pay her overtime compensation. Kovach's Complaint, a copy of which is attached hereto and incorporated herein by reference as Exhibit 3, sets forth in greater detail the facts and circumstances surrounding the Defendants' FLSA violations as they relate to Kovach, and further shows that Defendants' violations of the FLSA were part of a willful, calculated, and /or intentional pattern and practice.

54.     On or around February 3, 2021, Kovach quit working for Defendants. On February 4, 2021, at approximately 9:20 AM, Zeid called Plaintiff and requested her to come in and fill in for Kovach at the Defendants' Beachwood, Ohio Clinic (aka AWH) , and thereafter Sloan and

Zeid required Plaintiff to also perform Kovach's job duties and responsibilities, in addition to Plaintiff's existing job duties and responsibilities, which added an additional 40 hours per week to Plaintiff's work schedule, and for which Defendants failed to provide Plaintiff with any additional compensation or pay.

55.     On February 4, 2021, Plaintiff worked for Defendants from 8:30 AM until 8:30 PM, without being paid overtime or receiving any other type of additional compensation, at the Defendants' Beachwood, Ohio Clinic (aka AWH). From February 5, 2021, until I was terminated on March 5, 2021, I was required to cover Kovach's duties in addition to the job I had whether remotely or in the office without being any overtime or additional payroll-based compensation.

56.     At all times material to this action, APN, AWH, and Core were enterprises as defined by the FLSA, 29 U.S.C. § 203(r)(1), and engaged in commerce or in the production of goods for commerce as defined by §§ 203(b) and (s)(1) of the FLSA.

57.     At all times relevant to this action, APN, AWH, and Core were "employers" of Plaintiff as defined by § 203(d) of the FLSA.

58.     At all times material to this action, Sloan was an "employer" of Plaintiff as defined by § 203(d) of the FLSA.

59.     At all times material to this action, Zeid was an "employer" of Plaintiff as defined by § 203(d) of the FLSA.

60.     At all times material to this action, Plaintiff was an "employee" of Defendants as defined by § 203(e)(1) of the FLSA, and Plaintiff worked for Defendants within the territory of the United States within three years preceding the filing of this lawsuit.

61.     The provisions set forth in § 207 of the FLSA apply to Defendants and Plaintiff, who was covered by § 207 of the FLSA while she was employed by Defendants.

11

62.     At all times relevant to this action, Defendants employed Plaintiff in hourly, non-supervisory, non-managerial, and non-exempt positions.

63.     Defendants intentionally failed and/or refused to pay Plaintiff according to the provisions § 207 of the FLSA, which requires employers to pay non-exempt employees for work in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which they are employed.

64.     For at least three years, Defendants have been aware of the requirements of the FLSA and its corresponding regulations. Despite this knowledge, Defendants have failed to pay Plaintiff the amount of pay § 207 of the FLSA requires.

65.     Defendants failed to keep records of all hours worked each workday by Plaintiff and the total hours worked each workweek by Plaintiff.

66.     Defendants' failure to keep records of all hours worked by Plaintiff each workday and the total hours worked each workweek by Plaintiff was in violation of the FLSA, 29 U.S.C. 201-219 and of 29 CFR 516.2(a)(7).

67.     Defendants have engaged in a pattern and practice of violating the provisions of the FLSA by failing to pay Plaintiff and other similarly situated employees and former employees in accordance with § 207 of the FLSA including, but not limited to, former employee Kovach.

68.     By engaging in the above-mentioned conduct, Defendants willfully, knowingly, and/or recklessly disregarded and violated the provisions of the FLSA.

69.     As a direct and proximate result of Defendants' violations of the FLSA, Plaintiff has suffered damages by failing to receive the compensation to which she was entitled pursuant to § 207 of the FLSA.

12

70.     In addition to the amount of unpaid wages and benefits owing to Plaintiff, she is also entitled to recover an equal amount in addition to those damages as liquidated damages pursuant to 29 U.S.C. § 216(b). She is also entitled to prejudgment interest on her damages.

71.     Defendants' actions in failing to compensate Plaintiff in violation of the FLSA were willful, as evidenced by, *inter alia*, their failure to pay overtime compensation in accordance with the FLSA to other employees including, but not limited to, former employee Kovach.

72.     Defendants did not make a good faith effort to comply with the FLSA.

73.     Plaintiff is entitled to an award of attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT TWO

## Violation of the OMFWSA

74.     Plaintiff incorporates the foregoing paragraphs as if fully rewritten herein.

75.     Plaintiff brings this claim to recover unpaid overtime compensation under the provisions of the OMFWSA, as codified at Ohio Rev. Code, § 4111.03 and § 4111.10.

76.     The acts of which Plaintiff complains are also in violation of the provisions of the OMFWSA, codified at § 4111.03 and § 4111.10 of the Ohio Rev. Code.

77.     Defendants' failure to keep records of all of the hours worked each workday and the total hours worked each workweek by Plaintiff also violated the provisions of the OMFWSA, as codified at Ohio Rev. Code § 4111.03.

78.     As a result of Defendants' practices and policies, Plaintiff has been damaged in that she has not received wages due her pursuant to the OMFWSA.

## COUNT THREE

### Violation of the OPPA

79.     Plaintiff incorporates the foregoing paragraphs as if fully rewritten herein.

80.     The OPPA, as codified at Ohio Rev. Code § 4113.15, requires that all wages due and owing be paid by the employer within the time period specified therein.

81. The OPPA, as codified at Ohio Rev. Code § 4113.15(B), also makes an employer who fails to make wage payments for 30 days beyond the regularly scheduled pay day or, where no regularly scheduled pay day is applicable, for 60 days beyond the filing of a claim, liable for liquidated damages in an amount equal to 6% of the amount of the wages still unpaid and in contest or disputed, or $200.00, whichever is greater.

82.     Defendants did not pay Plaintiff for all the work she performed during her final pay period.

83.     Defendants are liable to Plaintiff for all unpaid wages.

84.     Defendants are additionally liable for liquidated damages.

## COUNT FOUR

### Gender and Sex Discrimination in Violation of the CRA, 42 U.S.C. § 2000e-2 et seq.

85.     Plaintiff incorporates the foregoing paragraphs as if fully rewritten herein.

86.     While working for Defendants, Plaintiff became the victim of gender and/or sex discrimination.

87.     During the time Plaintiff was employed by Defendants, female employees at APN and at its affiliated partner companies, AWH, and Core, including but not limited to the Plaintiff and Kovach, were paid significantly lower wages than men in similar positions and/or with less job responsibilities.

14

88.     For instance, male co-workers at APN, AWH, and Core, such as Glen Goykhberg ("Goykhberg") was paid over $100,000 a year, and male co-workers, Gary Chaney ("Chaney"), Adam Hickey ("Hickey"), Brian White ("White"), and Zach Buehner ("Buehner"), who were in similar positions or who had less responsibilities than Plaintiff, were paid $65,000 a year or more, while Plaintiff's pay was set at $42,000 a year.

89.     During the time Plaintiff was employed by Defendants, male and female employees at APN and at its affiliated partner companies, AWH, and Core, including Plaintiff, were also paid, in addition to their wages, commissions for selling HRT boxes (aka "units") (HRT boxes/units contained supplements, prescription medications, and ancillaries such as syringes and injection needles) through the APN Virtual or Network Model.

90.     During the time Plaintiff was employed by Defendants, female employees, however, including, but not limited to, Plaintiff and Ally Donofrio were only paid $25.00 to $40.00 per unit by the Defendants whereas male employee, Goykhberg was paid $100.00 per unit, and male employees, Chaney and Buehner, were paid $60.00 per unit. Moreover, Defendants' female employees, including, but not limited to, Plaintiff, had to fight with Defendant to get their bump from $25.00 to $40.00 per unit, which did not happen until around March 2020.

91.     Moreover, while female employees, such as the Plaintiff and Kovach were not even properly compensated for all the hours they worked, Zeid and Sloan knowingly allowed their male employees and/or agents, including, but not limited to, Antoni Adamrovich to repeatedly overstate their hours, despite complaints about this practice from their female employees, such as Plaintiff and Kovach.

92.    Plaintiff asked APN's male co-owners and her bosses, Zeid and Sloan about these pay discrepancies and disparate compensation schemes between males and females and asked for commensurate compensation based on her job performance and responsibilities.

93.    When Plaintiff told Zeid and Sloan that "people should be paid based on their work, good performance, and value regardless of gender or age", Zeid said that "was a dangerous mindset", which "doesn't align with APN's structure."

94.    At another meeting with Zeid and Sloan, shortly before she was fired, at which Plaintiff discussed promoting her to run APN's clinic and virtual model, Zeid told Plaintiff she "would be his first choice", but since she was "a 24-year-old girl" it would not work.

95.    Zeid and Sloan also refused to increase Plaintiff's compensation despite promises to do so, and shortly thereafter fired her on March 5, 2021.

96.    APN then hired a male, named Matt Jones ("Jones"), for the promotion Plaintiff had requested, even though Plaintiff was at least equally, if not more, qualified than Jones.

97.    In 2020, following the initial COVID-19 outbreak, male employees at APN's Beachwood, Ohio Clinic (aka AWH), who performed substantially similar job functions as Plaintiff, such as Goykhberg, Chaney, and Buehner, were given bonuses and gifts while Plaintiff was not.

98.    Plaintiff was later told the males received bonuses and gifts because they were still working through COVID-19 and dealing with the public.

99.    During that same time, however, Plaintiff also consistently worked through COVID-19 and she also dealt directly with the public and with patients of APN, AWH, and Core.

16

100.    During her time at APN and its affiliated companies AWH and Core, compared to her male counterparts, Plaintiff was overworked, underpaid, and unfairly treated.

101.    During her time at APN and its affiliated companies AWH and Core, other female employees, such as Kovach, and Plaintiff were also routinely required by the Defendants to work more than 40 hours per week without being paid overtime, even though neither Kovach nor Plaintiff were executive employees.

102.    On February 3, 2021, Kovach resigned her position with Defendants, after Defendants offered her a new compensation plan, pursuant to which she would be paid $1.00 an hour less than when she was initially hired.

103.    Prior to resigning, Kovach had also complained and expressed her concerns to Zeid and Sloan about an unfair work environment, favoritism toward male employees with respect to pay and compensation, sexism, and gender discrimination against women in the workplace.

104.    Kovach's resignation was communicated to Zeid and Sloan via email on February 3, 2021. A true and accurate copy of Kovach's February 3, 2021 email to Zeid and Sloan, announcing her resignation and detailing the reasons why she resigned and setting forth various instances of favoritism by Defendants towards males and discrimination against females with regard to pay and compensation, among other things, is attached hereto and incorporated herein by reference, as Exhibit 4.

105.    On February 4, 2021, at approximately 9:45 AM, Plaintiff had another telephone call with Zeid and Sloan during which she informed them that her male co-worker, Goykhberg, stated in a mocking manner, in front of the entire AWH Beachwood office, "that's what you get for putting a 20 something year old girl in charge of things." Goykhberg's outburst came after

he learned from Zeid, during a poker game, that Plaintiff had confidentially shared her opinion with Zeid that Goykhberg's sales productivity was subpar.

In response to Plaintiff's complaints and concerns regarding Goykhberg, Zeid and Sloan assured Plaintiff that Goykhberg would be disciplined, that Zeid would have a discussion with Goykhberg, and that "we needed to squash this". Thereafter, however, and contrary to the representations made by Zeid and Sloan, Goykhberg was never disciplined.

106.    On February 4, 2021, at or around 12:30 PM, Plaintiff had a meeting with Zeid and Sloan during which Plaintiff told Zeid and Sloan that assuming Kovach's job duties and responsibilities in addition to her own would add an additional 40 hours to her work schedule. In response to Plaintiff's concerns, Zeid and Sloan promised to provide Plaintiff with additional compensation.

107.    On February 4, 2021, Plaintiff worked for Defendants from 8:30 AM until 8:30 PM.

108.    On February 5, 2021, Plaintiff again expressed her concerns to Zeid and Sloan about being required to perform Kovach's former job duties and responsibilities without additional compensation, the duration for which she would have to perform Kovach's former job duties and responsibilities, and the unfair compensation that she had received compared to her male co-workers who did not have all of her additional job duties and responsibilities. In response to Plaintiff's concerns, Zeid and Sloan once again promised to provide Plaintiff with additional compensation.

109.    On February 8, 2021, Plaintiff sent an email to Sloan in accordance with AWH's Open Door Policy again expressing her concerns and unease about the way she was being unfairly treated and compensated. In response, Sloan admitted that he was partly to blame for Plaintiff's treatment and that he would "figure out a solution".

110.    On February 9, 2021, Plaintiff had another telephone call with Sloan to further discuss her concerns over her unfair treatment and compensation in comparison to her male co-workers, and in particular with regard to the disturbing favoritism shown by the Defendants to her male co-worker Goykhberg, who had previously made disparaging comments about her. Once again Sloan promised Plaintiff that a solution would be found addressing her concerns.

111.    On February 24, 2021, Zeid and Sloan came to the Defendant's Valley View facility to have a meeting with Core employees and AWH's Beachwood sales team. Before the meeting, Zeid came into Plaintiff's office and told her that he and Sloan were hiring a male Chief Operating Officer (i.e. Jones) and that he would take responsibilities off of Plaintiff's plate, but in the short-term there were still tasks for which Defendants needed Plaintiff's help.

112.    On February 25, 2021, Plaintiff had another phone call with Zeid, during which she again discussed with Zeid that she was being (and had been) unfairly paid and compensated, that there was a lack of job clarity, and the delay and lack of communication from Zeid and Sloan regarding her pay and compensation, being overworked and underpaid, and the unfair and unequal treatment she received in comparison to her male counterparts, and the need for immediate resolution. In response, Zeid told Plaintiff he would take a stab at a new compensation structure and get back to her.

113.    On March 2, 2021, Plaintiff had another phone call with Zeid, during which Zeid told her that Defendants still did not have a new compensation plan or structure prepared for her, and that instead Plaintiff should come up with her own compensation plan or structure for Defendants' consideration.

114.    On March 2, 2021, following her phone conversation with Zeid and pursuant to his request, Plaintiff emailed Zeid and Sloan a proposed compensation structure, which she believed was fair, for review by Defendants.

115.    Defendants never responded to Plaintiff's proposed compensation structure, however, and instead, on March 5, 2021, Zeid met with Plaintiff and fired her, but told her she could finish the day since she had patients scheduled.

116.    At the March 5, 2021 meeting, Zeid also instructed Plaintiff, before she left for the day, to terminate her father, Victor Bierman, who was also employed by Defendants, and she was further instructed by Zeid to tell her father that if he had any questions he could call him directly.

117.    Prior to being fired by Defendants, Victor Bierman had also raised concerns with Zeid and Sloan, and made complaints to them, about gender and sex discrimination, and unfair treatment and compensation of females in the workplace.

118.    The reasons Zeid gave Plaintiff for firing her, which were both false and pretextual in nature, were that Kovach's resignation planted ideas in Plaintiff's head about unfair treatment and sexism in Defendants' workplace, and that Victor Bierman had said things to Sloan about unfair treatment of APN and AWH employees (specifically women) and "he is no longer welcome in the building so you don't have a place here either" (Zeid was referring to

a phone call with Sloan in which Victor Bierman told him they would start losing good employees if they did not stop with the gender discrimination and unfair treatment).

119.    Following Plaintiff's termination, Zeid falsely told certain employees of Defendants that Plaintiff's termination was a mutual separation, but told other employees of Defendants that Plaintiff was fired for being "hostile", and refusing to perform her job functions and tasks, which was also false.

120.    During the time she was employed by Defendants, Plaintiff never received a disciplinary writeup.

121.    During the time she was employed by Defendants, Zeid and Sloan praised Plaintiff's work performance numerous times in writing and verbally.

122.    During her time at APN, and its affiliated companies AWH and Core, and particularly in the last months leading up to her firing, Zeid and Sloan also repeatedly used derogatory and/or inflammatory language to describe Plaintiff as a woman such as "hostile" and as having an "attitude".

123.    During her time at APN, and its affiliated companies AWH and Core, Jessica Beattie ("Beattie") was hired by the Defendants as a phlebotomist, and she came down to the Defendants' Columbus, Ohio location to train with Ally Donofrio.

124.    While Beattie was in the office, Zeid pulled the Plaintiff and Victor Bierman aside and expressed concerns to them that "Jessica did not fit the look for Affinity" and asked if they should move forward with her employment. This comment was made in regard to Beattie being a heavier-set female compared to other employees at the time because Zeid and Sloan had said numerous times in the past that their employees, and specifically their salespeople, should be "fit" and preferably "male".

21

125.   Beattie was subsequently fired by Defendants.

126.   When Beattie was subsequently fired by Defendants, Zeid and Sloan joked that "you always have to have two people in the room because girls tend to say things you know", in regard to speaking out against sexual harassment.

127.   While Beattie was being fired, Zeid and Sloan also made another male employee stand in the room even though this male employee was not Beattie's supervisor, and despite the fact that this male employee had no knowledge or insight into Beattie's performance or her employment with the Defendants.

128.   During Plaintiff's employment with Defendants, a pharmacy representative from Wells Pharmacy, named Heather, would occasionally assist with the expansion of the Defendant's business operations. Zeid and Sloan made numerous comments about Heather's good looks, and joked about Sloan "having sex with her" in exchange for a discount.

129.   During Plaintiff's employment with Defendants, Lindsay Snack ("Snack") was a female office administrator who worked at the Defendants' Beachwood, Ohio Clinic.

130.   Snack told Zeid and Sloan that she was pregnant.

131.   After Snack had told Zeid and Sloan that she was pregnant, Zeid made a comment in a Tuesday office meeting that "this is why it sucks to hire women because now I have to pay her to leave" or she would file a lawsuit for being fired while pregnant.

132.   Zeid then made Plaintiff and Kovach, on her first official day, fire Lindsay Snack and present her with a severance package in an effort to avoid a lawsuit.

133.    Neither Plaintiff nor Kovach were Snack's direct supervisors, and they did not work with Snack on a daily basis.

134.    Neither Plaintiff nor Kovach were ever given any documentation about Snack's performance or any reason for why she was being fired.

135.    Zeid did not give either Plaintiff or Kovach the option to say no to conducting Snack's firing.

136.    During Plaintiff's employment with Defendants, Zeid and Sloan on numerous occasions also made decisions to intentionally avoid marketing the Defendants' products and services to females, and to intentionally avoid training medical prescribers who work with the Defendants on servicing female patients for hormone programs because, according to Zeid and Sloan, females were "too difficult to deal with."

137.    During Plaintiff's meeting with Zeid and Sloan on February 5, 2021 at the Defendants' Beachwood Ohio Clinic following Kovach's departure, Zeid mocked Kovach's remarks that he and Sloan were sexist.

138.    During Plaintiff's two-hour phone call with Zeid on February 25, 2021, regarding compensation and compliance issues, Zeid again mocked Kovach's remarks that he was sexist.

139.    Plaintiff is a member of a statutorily protected class based on her gender and sex under the CRA 42 U.S.C. § 2000e-2 et seq.

140.    Defendants treated Plaintiff, as well as other female employees (e.g. Kovach, Donofrio, Beattie, and Snack), differently than other similarly male situated employees based on gender and/or sex.

141.    Defendants discriminated against Plaintiff and other female employees, on the basis of gender and/or sex throughout Plaintiff's employment with the Defendants.

142.   The actions and conduct of Defendants and its employees including, but not limited to, Zeid and Sloan, as described above and herein, was sufficiently severe or pervasive to affect the terms, conditions, or privileges of Plaintiff's employment.

143.   The actions and conduct of Defendants and its employees including, but not limited to, Zeid and Sloan, as described above and herein, had the purpose and/or effect of unreasonably interfering with Plaintiff's job duties and created an intimidating, hostile, and offensive working environment.

144.   Zeid's and Sloan's actions and conduct as described above and herein, had the purpose and/or effect of unreasonably interfering with Plaintiff's job duties and created an intimidating, hostile, and offensive working environment

145.   Defendants terminated Plaintiff's employment without just cause.

146.   Defendants terminated Plaintiff's employment based on her gender and/or sex.

147.   Defendants' discrimination against Plaintiff based on her gender and/or sex was in violation of CRA 42 U.S.C. § 2000e-2 et seq.

148.   Plaintiff, and other female employees of Defendants, repeatedly reported the gender and/or sexual discrimination occurring within the Defendant workplaces to their supervisors, including, but not limited to, Zeid and Sloan on numerous occasions.

149.   Zeid and Sloan's actions and conduct amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of the CRA 42 U.S.C. § 2000e-2 et seq.

150.   Plaintiff's supervisors, including, but not limited to Zeid and Sloan,  had knowledge of the gender and/or sexual discrimination occurring within Defendants workplace, but failed to take any corrective or remedial actions.

151.   In fact, Defendants' supervisors and managerial personnel, including, but not limited to Zeid and Sloan, directly participated in, encourage, and or ratified the gender and/or sexual discrimination occurring within Defendants' workplace, and therefore were aware of the gender and/or sexual discrimination that occurred.

152.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT FIVE

### Retaliation in Violation of the CRA, 42 U.S.C. § 2000e-2 et seq.

153.   Plaintiff incorporates the foregoing paragraphs as if fully rewritten herein.

154.   As a result of the Defendants' discriminatory conduct described above, Plaintiff complained about the gender and sex discrimination she experienced, as did other female employees of Defendants, such as Kovach.

155.   Subsequent to Plaintiff's reporting of sexual discrimination to her supervisors and/or managers, Plaintiff was terminated without just cause.

156.   Defendants' actions were retaliatory in nature based on Plaintiff 's opposition to the Defendants' unlawful discriminatory conduct.

157.   As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Plaintiff, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT SIX

### Retaliation in Violation of Ohio Rev. Code § 4112.02(1)

158.     Plaintiff incorporates the foregoing paragraphs as if fully rewritten herein.

159.     Pursuant to Ohio Rev. Code § 4112.02(1), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Ohio Revised Code."

160.     As a result of Defendants' discriminatory conduct described above, Plaintiff complained about experiencing discrimination on the basis of her sex and gender.

161.     Subsequent to Plaintiff reporting unlawful harassment, Plaintiff was terminated.

162.     Defendants' actions were retaliatory in nature based on Plaintiff's opposition to the unlawful discriminatory conduct.

163.     Defendants violated Ohio Rev. Code § 4112.01 et seq. by disciplining Plaintiff in a retaliatory manner.

164.     Defendants violated Ohio Rev. Code § 4112.01 et seq. by terminating Plaintiff.

165.     As a direct and proximate result of Defendants' retaliatory discrimination against Plaintiff, she suffered and will continue to suffer damages, including economic, and emotional distress damages.

## COUNT SEVEN

### Gender and Sex Discrimination in Violation of Ohio Rev. Code § 4112.01 et seq.

166.    Plaintiff incorporates the foregoing paragraphs as if fully rewritten herein.

167.    Plaintiff is a member of a statutorily protected class based upon her gender and/or sex under Ohio Rev. Code § 4112.02 et seq.

168.    Defendants treated Plaintiff differently than other similarly-situated employees based on her gender and/or sex.

169.    Throughout her employment with Defendants, Plaintiff was fully competent to perform her essential job duties.

170.    During Plaintiff's employment, she was subjected to discrimination on the basis of her gender and sex.

171.    Zeid and Sloan violated Ohio Rev. Code § 4112.01 et seq. by making disparaging comments to Plaintiff based on her gender and sex and forcing Plaintiff to work in an environment where discriminatory comments about her sex and gender were directed toward her and other female employees.

172.    Defendants violated Ohio R.C. § 4112.01 et seq. by permitting male employees, including, but not limited to, Zeid and Sloan, to disparage Plaintiff and other female employees because of their gender and sex.

173.    Defendants' employees and/or agents, including, but not limited to, Zeid and Sloan, violated Ohio Rev. Code § 4112.01 et seq. by condoning the disparaging statements made by its male employees and/or agents and directed at Plaintiff and other female employees.

174.     Defendants violated Ohio Rev. Code § 4112.01 et seq. by applying employment policies, including, but not limited to, policies and practices affecting compensation and pay, in a disparate manner based on their employees' gender and/or sex.

175.     Defendants violated Ohio Rev. Code § 4112.01 et seq. by applying disciplinary policies in a disparate manner based on their employees' gender and/or sex.

176.     Defendants' actions amount to discrimination on the basis of gender and sex in violation of Ohio Rev. Code § 4112.01, et seq.

177.     Defendants' actions as described above and herein also amounts to discrimination on the basis of sex through the creation of a hostile work environment in violation of Ohio Rev. Code § 4112.01, *et seq.*

178.     On or about March 5, 2021, the Defendants terminated Plaintiff.

179.     Defendants' discrimination against Plaintiff based on her gender and sex violates Ohio Rev. Code R.C. § 4112.01 et seq.

180.     As a direct and proximate cause of Defendant's conduct, Plaintiff suffered and will continue to suffer damages.

181.     As a direct and proximate cause of Defendants' conduct, Plaintiff is entitled to all damages provided for in Ohio Rev. Code § 4112.01 et seq., and Ohio Rev. Code § 4112-5-05(J)(l)(c), including liquidated damages, costs, and reasonable attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be rendered against the Defendants, jointly and severally, on all of the above claims, together with interest and costs, and for the following relief:

A.　　On Count One, pursuant to § 216(b) of the FLSA:

1.　　That Plaintiff be awarded damages in the amount of her respective unpaid compensation and benefits, plus an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(b), and prejudgment interest;

2.　　That Plaintiff's reasonable attorneys' fees, and the costs and expenses of this action, be paid and/or reimbursed by Defendants; and

3.　　For such other legal and equitable relief including, but not limited to, any injunctive

and/or declaratory relief, to which she may be entitled.

B.　　On Count Two:

1.　　That Plaintiff be awarded the amount of her respective unpaid compensation and benefits, and prejudgment interest, pursuant to the OMFWSA, and Ohio Rev. Code § 4111.03 and § 4111.10;

2.　　That Plaintiff's reasonable attorneys' fees, and the costs and expenses of this action, be paid and/or reimbursed by Defendants, pursuant to the OMFWSA Act, and Ohio Rev. Code § 4111.03 and § 4111.10; and

3.　　For such other legal and equitable relief including, but not limited to, any injunctive

and/or declaratory relief, to which she may be entitled.

C.    On Count Three:

1.    That Plaintiff be paid all unpaid wages due and owing pursuant to the OPPA and Ohio Rev. Code § 4113.15, et seq., together with liquidated damages, and attorneys' fees; and

2.    For such other legal and equitable relief including, but not limited to, any Injunctive and/or declaratory relief, to which she may be entitled.

D.    On Counts Four Through Seven:

1.    An award against each Defendant of compensatory and monetary damages to compensate Plaintiff for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

2.    An award of punitive damages against each Defendant in an amount in excess of $25,000;

3.    An award of reasonable attorneys' fees and non-taxable costs for Plaintiff's claims as allowable under law;

4.    An award of the taxable costs of this action;

5.    An award of such other relief as this Court may deem necessary and proper; and

6.    That the Court issue an order directing Defendants to expunge Plaintiff's personnel file of all negative documentation.

Respectfully submitted,

*/s/ Brian Green*
Brian Green (0063921)
bgreen@shaperolaw.com
James A. Marx (0038999)
jmarx@shaperolaw.com
SHAPERO & GREEN, LLC
Signature Square II, Suite 220
25101 Chagrin Boulevard
Beachwood, Ohio   44122
Office: (216) 831-5100
*Attorneys for Plaintiff Ashley Bierman*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action.

*/s/ Brian Green*
Brian Green (0063921)
James A. Marx (0038999)
SHAPERO & GREEN, LLC

P:\Brian\Bierman.Ashley\Complaint