**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ASHLEY BIERMAN, | ) | CASE NO. 1:21-cv-01993 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| AFFINITY PHYSICIAN  NETWORK | ) | |
| LLC, *et al.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

### I. Procedural History

Now pending is Plaintiff's Amended Complaint against Defendants Affinity Physician

Network LLC ("APN"), Affinity Whole Health LLC ("AWH"), Core Pharmacy LLC ("Core"),

Jerry Sloan, and Brian Zeid  (collectively "Defendants"). (R. 20). The Amended Complaint

raises the following causes of action: (1) a violation of the Fair Labor Standards Act (FLSA) for

failing to pay overtime for hours worked in excess of forty  hours per week; (2) a violation of the

Ohio Minimum Fair Wage Standards Act (OMFWSA), Ohio Revised Code (O.R.C.) §§  4111.03

and 4111.10, for failing to pay overtime; (3) a violation of  O.R.C. § 4113.15 for failing to pay

all wages due and owing within the time period specified therein; (4) gender and sex

discrimination in violation of the Civil Rights Act, 42 U.S.C. § 2000e-2 *et seq*.; (5) retaliation for

making complaints related to sex and gender discrimination in violation of federal law; (6)

retaliation for making complaints related to sex and gender discrimination in violation of Ohio

law; (7) gender and sex discrimination in violation of O.R.C. § 4112.01 *et seq*.; and (8) wrongful

discharge. (R. 20).

Defendants filed a Joint Answer to the Amended Complaint as well as a counterclaim. (R.

21). Defendants raised a single counterclaim entitled "Theft of computer files/trades secrets." (R.

21, PageID# 260). The counterclaim states as follows:

> 7.  At about the time BIERMAN was terminated from APN for these reasons, Counterclaim Plaintiff learned she opened and read confidential business information communications, and sabotaged the Counterclaim Plaintiff's computer system by changing passwords to software files and in fact locked out the Counterclaim Plaintiffs from its own software programs necessary to operate the business from March 4th thru March 8th, 2021 and used her own email address to send confidential business information in the computer to another email address including her suspected new 3rd party employer and competitor of APN.

> 8. BIERMAN converting computerized files owned by the Counterclaim Plaintiff is a theft of trade secrets in violation of Ohio RC 1333.61 *et seq*, trespass; and her compromising computer systems and sending information from them to another computer system is a crime actionable as a civil action.

> Ohio RC 2913.04 states in part "(A) No person shall knowingly use or operate the property of another without the consent of the owner or person authorized to give consent. (B) No person, in any manner and by any means, including, but not limited to, computer hacking, shall knowingly gain access to, attempt to gain access to, or cause access to be gained to any computer, computer system, computer network, ... telecommunications device, telecommunications service, or information service without the consent of, or beyond the scope of the express or implied consent of, the owner of the computer, computer system, computer network, ... telecommunications service, or information service or other person authorized to give consent."

> 9.  BIERMAN was not authorized to search computerized files owned by the Counterclaim Plaintiff for the purpose of reading, stealing, sabotaging them, and had no legal title to any intellectual property of the Counterclaim Plaintiff, and was not permitted to access company computers after her termination of employment in any case. All APN computer files are legally protected trade secrets under Ohio law.

(R. 21, PageID# 261-262).

Plaintiff filed a Motion for summary judgment and/or Motion for Judgment on the Pleadings regarding the Counterclaim. (R. 36).[1] Defendants filed a brief in opposition (R. 39), and Plaintiff filed a reply brief. (R. 43).

## II. Summary of Factual Allegations Concerning Defendants' Counterclaim

### A. Evidence Produced During Discovery

Plaintiff Bierman's employment terminated on March 5, 2021. (R. 39-1, PageID# 944, Bierman Depo. at pp. 7-8; *see also* R. 37-5, PageID# 637, Sloan Depo. at p. 61). On March 16, 2022—over a year after Plaintiff Bierman's termination—Defendant APN filed a counterclaim against her alleging theft of computer files/trade secrets in violation of the Ohio Uniform Trade Secrets Act (OUTSA), O.R.C. § 1333.61 *et seq*. (R. 17).

Defendants Zeid and Sloan are the sole owners of Defendant's APN, AWH, and Core. (R. 37-5, PageID# 924, Sloan Depo. at p. 12). When asked to identify any stolen computer files or trade secrets during his deposition, Defendant Zeid gave the following relevant testimony:

> Q.   **Do you know if Ms. Bierman actually appropriated any proprietary or confidential information?**
>
> A.   **I can't confirm that, no.**
>
> ***
>
> Q.   All right. Well, do you have any proof that you can direct me to that she stole any proprietary or confidential information?
>
> MR. CONWAY: Objection. You can answer.
>
> A.   Not without doing some forensic on her side. I mean, we can see that she had the ability to do it, but I can't confirm what she took.
>
> Q.   Well, she had the ability to do it because she was a super administrator,

---

[1] Defendants also filed a motion for summary judgment. (R. 37). This memorandum opinion and order does *not* address that motion, which will be addressed in a separate order.

but **I'm asking you if you have any evidence or proof that she did take anything?**

A.     **I can't -- I can't say for sure.**

***

Q.     That's not my question. I'm asking you if she -- if you have any knowledge or proof that she actually stole any proprietary or confidential information?

       MR. CONWAY: Objection. You're talking beyond the passwords and emails, correct?

A.     Those were stolen. So stealing access to our system is --

Q.     I want to know if she stole like, lists of patients --

A.     I would like to know that too.

***

Q.     Putting that aside [changing email address], do you have any evidence that she stole or took any other proprietary information or confidential information?

A.     I believe the only evidence I can say to is that we have record of things being deleted. So I don't know if she deleted them and took them, or deleted them out of the system.

(R. 39-3, PageID# 813, Zeid Depo. at pp. 21-24) (emphasis added).

With respect to damages or remedial measures, the deposition testimony of Zeid was as follows:

Q.     Do you have lists of what was deleted? Did you compile or did anyone else compile a list of what was deleted?

A.     Yeah, I believe so, I don't recall exactly what's on there, but we hired people to do that and try to track the keystrokes of what happened. So I don't know, off the top of my head, all that, but...

Q.     Well, are you talking about vendors, **did you hire vendors, are you talking about them?**

4

A.     **Yes**.

***

Q.     Okay. So what I'm asking -- I mean, **did you hire them, saying did you pay them money or was this** –

A.     **Money was spent, yes, money was spent on vendors to handle this, correct**.

Q.     **What was spent?**

A.     **I'd have to look that up, I don't know off the top of my head**.

Q.     Have you provided documents to your attorney showing what was spent or who's paid or what was taken or what you are claiming was lost as a result of any of Ms. Bierman's actions?

A.     Yeah, I don't know what exactly was provided to my attorney, because It's been a while, I'd have to look, **but we plan on putting it all together, so you'll see it**.

        MR. CONWAY: I believe that we submitted some documents on that issue, But we're going to follow up with third parties just to make sure everything's covered. And we'll get that to you if there's anything else.

(R. 39-3, PageID# 814, Zeid Depo. at pp. 25-26) (emphasis added).

Plaintiff contends that "[d]espite the assurances of Zeid and Affinity's counsel, however, no such documentation was ever provided. In its counterclaim, Affinity claims to have 'paid for 150 hours of consulting time debugging the company damaged computer system.' The validity of this assertion, however, is belied by the fact that Affinity has not produced one bill, one invoice, one canceled check, or any other documentation of any kind showing it paid anything to anyone to debug its computer system." (R. 36, PageID# 337).

The deposition testimony of Sloan, co-owner of the Defendant entities, addressed the issue of whether any trade secrets were stolen as follows:

5

Q.      How were you damaged, if at all, by what you claim she did?

[Objection omitted]

A.      It was labor, man hours, we had to hire people to assist, recover passwords and data.

Q.      Who did you hire?

A.      I forget, I'm not sure of the names.

Q.      What did you have to pay them?

A.      I'm not sure of the exact amount.

Q.      Was anything stolen?

            MR. CONWAY: Objection. You can answer, if you understand.

A.      She could have taken data.

Q.      Well, to your knowledge, **did she, in fact, take anything?**

A.      **I'm not sure**.

                                    ***

Q.      Do you have any knowledge or information as to whether she physically appropriated anything from the company?

A.      I don't know.

Q.      Was there any forensic analysis performed of your computer systems?

A.      Yeah again, digital. That's all digital, not physical.

Q.      **Who did that?**

A.      **I'm not sure**.

Q.      You don't know?

A.      No.

Q.      Is it someone within your company, or **did you hire outside consultants?**

6

A.    **We hired outside**.

Q.    You don't know who you hired?

A.    Nuh-uh, no.

Q.    Do you know who hired the outside consultant?

A.    No.

Q.    Was the company ever provided with any kind of report from the outside consultants which set forth their findings?

A.    Not that I remember seeing.

(R. 37-5, PageID# 652, Sloan Depo. at pp. 121-122, 129) (emphasis added).

APN's bookkeeper, Jill Salsbury, stated in her deposition that whatever Bierman purportedly did with the passwords, it did not stop the company from doing business. (R. 36-2, PageID# 408, Salsbury Depo at p. 101).

Plaintiff's brief in support of its motion for summary judgment asserts that while Defendants claims to have paid for 150 hours of consulting time debugging the company damaged computer system, "Affinity has not produced one bill, one invoice, one canceled check, or any other documentation of any kind showing it paid anything to anyone to debug its computer system." (R. 36, PageID# 337).[2] Defendants' opposition submits an affidavit that purports to address the efforts and costs associated with debugging their computer systems.

---

[2] Plaintiff similarly contends that Defendants have "not produced any documentation or calculations to Support" any claim for lost profits and argue that because discovery has concluded, any attempt to show damages now contravenes this Court's Order and by Fed. R. Civ. P. 26(a)(1)(A)(iii). (R. 36, PageID# 338; R. 43, PageID# 1582-1584). Discovery cut-off was November 18, 2022.

**B.    Affidavits Filed With Motions and/or Briefs**

Defendant's brief in opposition relies heavily on an affidavit of Defendant Zeid, dated January 11, 2023, that claims Bierman "sabotaged" Defendants' computer application files by changing passwords. (R. 39, PageID# 788, *citing* R. 39-1, PageID# 799-800, Zeid Aff. at ¶¶2-43). In the same affidavit, Defendant Zeid identifies a number of Defendants' employees—not outside vendors—who ostensibly expended 200 hours to fix computer issues resulting in $13,770.00 of wages. Defendant Zeid  "infers" that he lost corporate business between March 5, 2021 and March 26, 2021, but does not specify a dollar amount or any methodology by which he could demonstrate the lost profit claimed in the-crossclaim. *Id*.

Defendants also cite a number of emails attached as Exhibits to support the proposition that Bierman changed the passwords and/or emails associated with numerous accounts. (R. 39-9, Exh. 10-1 through 10-26).

Plaintiff filed a motion to strike portions of the affidavit of Defendant Zeid and Exhibits 10-1 through 10-26 submitted in support of Defendant's brief in opposition to Plaintiff's motion for summary judgment. (R. 44). Plaintiff argues Zeid's affidavit contradicts his deposition testimony and that emails in Exhibits 10-1 through 10-26 were not timely produced during discovery. *Id*. Defendants filed an opposition brief, which was completely unresponsive to the argument that the emails were never timely produced during discovery. (R. 47). This Court previously denied the motion to strike, indicating it "shall address the appropriateness of the submitted affidavits, declarations, and exhibits when ruling upon the motions for summary judgment." (R. 55).

A party has a continuing duty to supplement discovery disclosures and responses is created by Rule 26(e), which provides in pertinent part:

A party who has made a disclosure under Rule 26(a)—or who has responded to an

interrogatory, request for production, or request for admission—must supplement
or correct its disclosure or response:

> (A) in a timely manner if the party learns that in some material respect the
> disclosure or response is incomplete or incorrect, and if the additional or
> corrective information has not otherwise been made known to the other parties
> during the discovery process or in writing[.]

Pursuant to Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a
witness as required by Rule 26(a) or (e), the party is not allowed to use that information or
witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was
substantially justified or is harmless." As explained by the Sixth Circuit Court of Appeals,
district courts have an inherent power to exclude evidence even where the court has issued no
prior order. *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 344 (6th Cir. 2002)[3] (*citing Alldread v.
City of Grenada*, 988 F.2d 1425, 1436 (5th Cir. 1993) ("Rule 26 imposes no requirement,
express or implied, that a motion to compel precede a court's imposition of a sanction ... for
failure to supplement expert interrogatory responses.")). *See also World Heritage Animal
Genomic Res., Inc. v. Wright,* 2023 WL 3868646, at *3 (6th Cir. Jun. 7, 2023) (agreeing with the
district court and refusing to consider certain letters as substantive evidence that were not
produced during discovery); *Mason v. Arctic Cat, Inc.*, 2012 WL 1570861, at *4 (E.D. Mich.
May 4, 2012) (excluding documents produced three months after the close of discovery where
the producing party had not demonstrated good cause ); *Morrison v. Stephenson*, 2008 WL
144850, at *1 (S.D. Ohio Jan. 10, 2008) ("It is absolutely improper for Defendants to utilize
evidence in their reply that was not produced in discovery....")

Defendants' opposition brief to plaintiff's motion to strike was completely unresponsive to

---

[3] The unrelated holding in *Toth* concerning erroneous jury instructions was modified by *Roberts
ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776 (6th Cir. 2003).

the argument that the exhibits attached to Zeid's affidavit were never timely produced during discovery. (R. 47). By extension, Defendant has provided this Court with no basis for finding that: (1) the documents were timely provided; or (2) the untimeliness should be excused as substantially justified or is harmless. Moreover, the Court finds that Plaintiff has been prejudiced, as Plaintiff was unable to question Defendants during their depositions about these documents, thereby frustrating the discovery process. As such, these documents are excluded.

Turning to the affidavit of Zeid, Plaintiff contends that portions of the affidavit should be stricken because: (1) ¶2 of Zeid's affidavit is not based on personal knowledge; (2) ¶2 of Zeid's affidavit directly contradicts his deposition testimony; and (3) ¶¶3-4 of Zeid's affidavit directly contradicts his deposition testimony.

The second paragraph of Zeid's affidavit states as follows:

> 2. I know from personal observation and knowledge BIERMAN sabotaged the APN and AFFINITY WHOLE HEALTH computer application files related to using on line services HubSpot, Southlake RX, Instagram, Access MedLabs, Namecheap, Fedex, Google, Wordpress, Jakprints, Survey Monkey, as charged in the counterclaim by changing company access passwords for her own personal use after being hired by a new employer, **and** based upon her evasive deposition testimony as well where her counsel repeatedly interrupted and interfered with her deposition testimony with coaching objections.

(R. 39-1, PageID# 799) (emphasis added).

The Court agrees that ¶2 of Zeid's affidavit is not based on personal knowledge to the extent it claims it is based on Plaintiff's allegedly evasive deposition. Furthermore, Zeid's statement that he knows from personal observation and knowledge that Plaintiff allegedly sabotaged computer application files is wholly conclusory, providing no basis for his personal knowledge. Zeid's deposition testimony, cited in Defendants' brief in opposition, only states that Zeid learned Defendants were locked out from systems *from other employees*. (R. 39-3, PageID#

10

812, Zeid Depo. at p. 18-19). Therefore, the Court finds it appropriate to strike  ¶2 of Zeid's affidavit. Nevertheless, even if the Court considered this portion of Defendant Zeid's affidavit, it would not alter the ruling on Plaintiff's Motion. As explained *infra*, the evidence presented by Defendants fails to show that Plaintiff acquired a trade secret, and passwords alone are insufficient.[4]

### III. Legal Standards

Summary judgment is appropriate only if the moving party demonstrates there is no genuine dispute of material fact on an issue that would entitle the movant to judgment as a matter of law. Fed.R.Civ.P. 56(a).[5] "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, a court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge…." *Anderson*, 477 U.S. at 255. Nevertheless, a disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir.

---

[4] Plaintiff has also argued that  ¶¶3-4 of Zeid's affidavit directly contradicts his deposition testimony and should be stricken. While the Court broadly agrees, these paragraphs generally address efforts made to restore Defendants' computer systems to normal operations and the hours expended by their employees to do so. Because the Court finds that Plaintiff is entitled to summary judgment, these issues are rendered moot.

[5] Because the Court finds that Plaintiff is entitled to summary judgment on Defendant APN's counterclaim, the Court foregoes an analysis of the motion's alternative argument for judgment on the pleadings.

2013).

## IV. Law and Analysis

### A. OUTSA Claim

Defendant APN has raised a single counterclaim "ONE: Theft of computer files/trade secrets." (R. 21, PageID# 260). Plaintiff asserts it is entitled to summary judgment on Defendant's OUTSA claim, arguing that, with discovery completed, Defendant APN "does not know what, if anything, let alone what, if any, trade secrets, Bierman allegedly took from APN." (R. 36, PageID# 348).

"In order to prevail on a misappropriation-of-trade-secret claim, a plaintiff must show by a preponderance of the evidence: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Handel's Enterprises, Inc. v. Schulenburg*, 765 Fed. App'x 117, 122 (6th Cir. 2019) (*quoting Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 Fed. App'x 860, 861 (6th Cir. 2008)).

Ohio law defines a "trade secret" as follows:

> (D) "Trade secret" means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> > (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> >
> > (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.R.C. § 1333.61(D).

12

Plaintiff asserts that Defendant APN has failed to allege a trade secret. The pertinent issue is whether there is sufficient evidence in the record to create a genuine issue of material fact from which a reasonable jury could find Plaintiff engaged in the unauthorized acquisition and use of a trade secret. After considering the parties' briefs and the evidence presented, the Court finds Defendant APN has failed to identify any evidence that Plaintiff acquired a "trade secret" from any of the Defendants. Construing the evidence in the light most favorable to Defendant APN as the non-moving party, the evidence, at best, could show that Plaintiff changed a number of passwords that prevented her former employer from accessing third-party online services such as HubSpot, Southlake RX, Instagram, Access MedLabs, Namecheap, Fedex, Google, Wordpress, Jakprints, and Survey Monkey. (R. 39-1, ¶2, PageID# 799). Defendants have not alleged or identified any trade secret information that was stored on these services.

"[A] claimant asserting trade secret status has the burden to identify and demonstrate that the material is included in categories of protected information under the statute." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 1999-Ohio-260, 85 Ohio St. 3d 171, 181, 707 N.E.2d 853, 862 (Ohio 1999) (*citing State ex rel. The Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St.3d 513, 525, 687 N.E.2d 661, 672 (Ohio 1997). Given the deposition testimony recounted above, Defendants Zeid and Sloan, the sole owners of the Defendant entities, could not identify any protected *information* that Plaintiff acquired or accessed using the allegedly stolen passwords. To the contrary, it is entirely unclear, despite the completion of discovery, what constitutes the "trade secret" in this case.

Defendants' brief in opposition identifies no *information*, supported by evidence, that was acquired or accessed by Plaintiff besides passwords. Defendants have not pointed to any authority suggesting that a password, standing alone, constitutes a "trade secret" under the laws

13

of Ohio. Nor has this Court has been presented with authority suggesting that a password alone constitutes "information" as defined by the applicable statute. There exists ample case law that suggests *information protected by a password* could be a trade secret, as the use of a password reflects an effort to maintain that information's secrecy. S*ee, e.g., Heartland Home Fin., Inc. v. Allied Home Mortg. Cap. Corp*., 258 Fed. App'x 860, 862 (6th Cir. 2008) (finding that under Ohio law, a customer list could be trade secret because if it was stored in a password-protected file or if hard copies of such a list were kept in a locked filing cabinet); *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Env't Prot. Agency*, 2000-Ohio-282, 88 Ohio St. 3d 166, 173, 724 N.E.2d 411, 418 (Ohio 2000) ("A customer list is an intangible asset that is presumptively a trade secret when the owner of the list takes measures to prevent its disclosure in the ordinary course of business to persons other than those selected by the owner.")

However, the case at bar presents materially different facts. Here, Defendant APN has not presented any evidence that information protected by passwords was taken. Thus, the above cases are inapposite. Even if the Court were to assume, for the sake of argument only, that a password constitutes "information" under the operative statute, such information must derive "independent economic value" from not being generally known. O.R.C. § 1333.61(D)(1). A password, on its own, does not possess any economic value independent from the information it protects.

Defendants' citation to *Rhododendron Holdings, LLC v. Harris*, 2021-Ohio-147, ¶ 28, 166 N.E.3d 725, 734 (Ohio Ct. App. 2021) is inapposite, as that decision found that "design-history files" could qualify as a trade secret. It did not address the issue of whether a password itself constitutes a trade secret or whether a password has any independent economic value. Defendants' citation of *Atricure, Inc. v. Meng*, 842 Fed. App'x 974, 978 (6th Cir. 2021) is

14

similarly unhelpful, as the trade secrets therein involved "detailed drawings and manufacturing specifications for materials, information regarding the pricing and vendors of AtriCure's products, the proprietary ASU algorithm, and the function and use of AtriCure's products." Neither of these cases stands for the proposition that a password is itself a trade secret.

In other words, it is the *information* being protected that is a trade secret, and not the protection mechanism itself. A password is no more a trade secret than the key to a locked filing cabinet. Therefore, Defendant APN's counterclaim fails with respect to the first element of a claim under OUTSA—the existence of a trade secret. As a result, the Court finds Plaintiff is entitled to summary judgment with respect to Defendant APN's counterclaim.

**B. O.R.C. § 2307.60 Claim**

In its opposition brief, Defendants assert that its counterclaim is not solely an OUTSA claim, claiming that "OUTSA [was] plead for *res gestae* informational purposes" and that Defendant APN is actually seeking to recover under O.R.C. § 2307.60. (R. 39, PageID# 786-787). Defendants never mentioned O.R.C. § 2307.60 in their counterclaim. Pursuant to O.R.C. § 2307.60(A)(1), "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law …." Defendant APN's counterclaim did, however, cite the criminal statute O.R.C. § 2913.04, which prohibits the use or operation of another's property, as well as prohibiting accessing any computer or computer system without consent. (R. 21, PageID# 262, ¶8). Defendant APN, however, never attempted to connect the criminal statute with O.R.C. § 2307.60 and it is highly questionable whether Plaintiff was put on fair notice of the counterclaim against her if Defendant APN indeed sought to raise a § 2307.60 claim rather than the OUTSA claim it plainly and expressly identified in the counterclaim.

15

Nevertheless, even if the Court were to construe the counterclaim as raising a §
2307.60(A)(1) claim, such a claim would be dismissed as explained below.

**C. OUTSA Preemption**

Plaintiff argues that Defendant APN's contention that its counterclaim sets forth alternative
causes of action beyond an OUTSA claim (such as a § 2307.60 claim) is without merit, because
OUTSA preempts all civil claims based on misappropriation of a trade secret. (R. 36, PageID#
347). The statute reads as follows:

> (A) Except as provided in division (B) of this section, sections 1333.61 to 1333.69
> of the Revised Code displace conflicting tort, restitutionary, and other laws of this
> state providing civil remedies for misappropriation of a trade secret.
>
> (B) Sections 1333.61 to 1333.69 of the Revised Code do not affect any of the
> following:
>
>> (1) Contractual remedies, whether or not based on misappropriation of a trade
>> secret;
>>
>> (2) Other civil remedies that are not based on misappropriation of a trade
>> secret;
>>
>> (3) Criminal remedies, including those in other sections of this chapter,
>> whether or not based on misappropriation of a trade secret.

O.R.C. § 1333.67

Herein, Defendant APN characterized its sole counterclaim as "ONE: Theft of computer
files/trade secrets." (R. 21, PageID# 260). The first exception to the rule is inapplicable, as
Defendant APN has not alleged it has a contractual remedy. The question of whether Plaintiff's
alleged sabotage could qualify as an exception under § 1333.67(B)(2) must be answered in the
negative in light of binding Sixth Circuit precedent.

> Uncertainty about the scope of the [Uniform Trade Secrets Act]'s preemption
> clause runs along at least two axes. First, courts are divided about whether the
> UTSA preemption clause should be read literally, to displace "only civil non-

contract remedies for misappropriation of a trade secret," or whether it should be interpreted more broadly so as "to abolish all other causes of action for theft, misuse, or misappropriation of any confidential or secret information." *Parker & Justice*, *supra*, at 648 (emphasis in original); *see also Office Depot*, 821 F.Supp.2d at 918 (stating that "courts have disagreed regarding whether claims based on misappropriation of information not rising to the level of 'trade secret' status are nevertheless preempted under the UTSA," and citing federal district court cases from Arizona and Virginia to illustrate this point). The majority of UTSA jurisdictions have taken the latter approach, *Parker & Justice*, *supra*, at 648, and **courts applying the OUTSA generally seem to have subscribed to the (broader) majority rule.** *Office Depot*, 821 F.Supp.2d at 918-19 (*citing Allied Erecting and Dismantling Co. v. Genesis Equip. & Mfg.*, 649 F.Supp.2d 702, 720 (N.D. Ohio 2009)); *Rogers Indus. Prods. Inc. v. HF Rubber Mach., Inc.*, 188 Ohio App.3d 570, 936 N.E.2d 122, 130 (2010) ("This language was intended to prevent inconsistent theories of relief for the same underlying harm and has been interpreted to bar claims that are based solely on allegations of misappropriation of trade secrets or other confidential information.").

*Stolle Mach. Co., LLC v. RAM Precision Indus.*, 605 Fed. App'x 473, 484 (6th Cir. 2015) (emphasis added). Another court in this district has explained that OUTSA's "preemption extends to all claims based on misappropriation of information regardless of whether the information ultimately rises to the level of a 'trade secret.'" *Shepard & Assocs., Inc. v. Lokring Tech., LLC*, 2022 WL 2398392, at *5 (N.D. Ohio July 1, 2022) (*citing Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 940 (S.D. Ohio 2012)). Therefore, the Court finds the second exception does not apply to Defendant APN's theft of computer files/trade secrets claim.

Defendant APN, nevertheless, argues that "[g]iven the APN counterclaim cause of action arises under an independent Ohio criminal code statute that creates a civil action remedy the Counterclaim is expressly excluded from OUTSA preemption" under the third exception in O.R.C. § 1333.67(B)(3)—criminal remedies, whether or not based on misappropriation of a trade secret. (R. 39, PageID# 786-787). The Court agrees with Plaintiff that the remedy Defendant APN seeks based on O.R.C. § § 2307.60 is a *civil* remedy, even if it based on damages an

individual suffers due to a defendant's violation of a criminal statute. Thus, OUTSA remains the exclusive remedy for Defendant APN's counterclaim.

## V. Conclusion

For the foregoing reasons, Plaintiff's Motion for summary judgment with respect to Defendant APN's counterclaim (R. 36) is GRANTED and that claim is dismissed.

The alternative theory in Plaintiff's Motion, for judgment on the pleadings, (R. 36) is DENIED as moot.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: May 9, 2025