**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ASHLEY BIERMAN, | ) | CASE NO. 1:21-cv-01993 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | JUDGE DAVID A. RUIZ |
| AFFINITY PHYSICIAN NETWORK LLC, *et al.*, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) ) | |

**I. Procedural History**

Now pending is Plaintiff's Amended Complaint against Defendants Affinity Physician Network LLC ("APN"), Affinity Whole Health LLC ("AWH"), Core Pharmacy LLC ("Core"), Jerry Sloan, and Brian Zeid (collectively "Defendants"). (R. 20). The Amended Complaint raises the following causes of action: (1) a violation of the Fair Labor Standards Act (FLSA) for failing to pay overtime for hours worked in excess of forty hours per week; (2) a violation of the Ohio Minimum Fair Wage Standards Act (OMFWSA), Ohio Revised Code (O.R.C.) §§ 4111.03 and 4111.10, for failing to pay overtime; (3) a violation of the Ohio Prompt Pay Act (OPPA), O.R.C. § 4113.15, for failing to pay all wages due and owing within the time period specified therein; (4) gender and sex discrimination in violation of the Civil Rights Act, 42 U.S.C. § 2000e-2 *et seq.*; (5) retaliation for making complaints related to sex and gender discrimination in violation of federal law; (6) retaliation for making complaints related to sex and gender

discrimination in violation of Ohio law; (7) gender and sex discrimination in violation of O.R.C. § 4112.01 *et seq.*; and (8) wrongful discharge. (R. 20).

Defendants filed a Joint Answer to the Amended Complaint as well as a counterclaim. (R. 21). Defendants raised a single counterclaim entitled "Theft of computer files/trades secrets." (R. 21, PageID# 260).[1]

Defendants also filed a motion for summary judgment. (R. 37). Plaintiff filed a brief in opposition (R. 49), and Defendants filed a reply in support of their motion. (R. 52).

## II. Summary of Key Facts[2]

Defendants Zeid and Sloan are the sole owners of Defendant APN, as well as Defendants AWH, and Core. (R. 37-5, PageID# 924, Sloan Depo. at p. 12).

The Amended Complaint alleged Plaintiff was employed by Defendant APN since 2017 until her termination. (R. 20, PageID# 174-175, ¶¶27-30). Plaintiff became a full-time employee of APN in 2019, with the titles of "Office Administrator" and "Director of Provider Development", and she was converted from an hourly to a salaried employee with compensation of $42,000 a year plus commissions. (R. 39-7, PageID# 946-48, 967-68; Bierman Depo. at 15, 20, 22-23, 101, 102). Between May 1, 2019 and March 5, 2021, Defendants admit Plaintiff was never paid overtime. (Requests for Admission, R. 49-5, PageID# 2004).

Plaintiff Bierman's employment terminated on March 5, 2021. (R. 39-1, PageID# 944, Bierman Depo. at pp. 7-8; *see also* R. 37-5, PageID# 637, Sloan Depo. at p. 61). According to Defendant APN's first quarterly federal tax return, at the time Plaintiff was terminated,

---

[1] Plaintiff filed a motion for summary judgment with respect to Defendant APN's counterclaim (R. 36), which the Court granted, and that claim was dismissed. (R. 56).
[2] The Court's recitation of the facts is not intended to be exhaustive, and focuses only on those facts germane to the resolution of the pending motion.

Defendant APN had only two employees. (R. 49-15, PageID# 2368, Exh. 15).[3]

Defendant Zeid testified that Bierman did not have the authority to hire or fire, and did not manage or supervise other employees at any of the "Affinity" companies. (R. 49-5, PageID# 1946, Zeid Depo. 9-30-2022 AM Session at 42). He also testified that at Defendant APN, he "maintained all rights for hiring and firing and compensation …." (R. 49-5, PageID# 1945, Zeid Depo. 9-30-2022 AM Session, at 41).

During her deposition, Bierman was asked what actions constituted sexual harassment against her, to which she responded, "Nothing, just the general nature of how Brian [Zeid] and Jerry [Sloan] operated the clinic." (R. 39-7, PageID# 957, Bierman Depo. at 60). She did, however, state that "male employees were allowed to make disparaging comments about me specifically, and they were not disciplined for it in any formal manner. The male employees at the clinic were often hostile towards me and the other female employees that worked there." *Id*. at 61. An example of one such statement was "[t]his is the sh[*]t show you get when you put a 23-year-old girl in charge of things." *Id*. at 62. Plaintiff also testified that "Brian [Zeid] had said that he would promote me, but since I was a 24-year-old girl, it would not work because the men at the clinic wouldn't take very kindly to that. There would be no sense of, like, respect because I was young and a female and they were much older and male." *Id*. at 64. She also testified that Defendants Zeid and Sloan asked her to fire a pregnant female employee, indicating "[t]hey wanted to fire her because Brian was concerned that the further along she got in her pregnancy and when she had the baby it would interfere with her work at Affinity and so she had to go." (R.

---

[3] With respect to the other company Defendants who did not technically employ Plaintiff, Defendant Core had five employees in the first quarter of 2021 according to its tax return (R. 49-16, PageID# 2373, Exh. 16), while Defendant AWH had seven in the same time frame. (R. 49-14, PageID# 2361, Exh. 14).

3

39-1, PageID# 971, Bierman Depo. at 114).

Plaintiff Bierman's declaration states that:

> [Defendants] Zeid and Sloan also made disparaging comments regarding other Affinity female employees including: (1) [C.L.], who Zeid fired after deeming her to be "old and incompetent;" (2) [J.B.], who Zeid said did not "fit the look" for a woman at Affinity because she was overweight and that he preferred Affinity employees to be "fit" and "male;" when [J.B.] was subsequently terminated by Zeid and Sloan they also mockingly commented that "you always have to have two people in the room because girls tend to say things;" and (3) Zeid and Sloan also exhibited a preference to only hire and retain male employees, stating that female employees were "more drama" and "harder to work with", which made it more difficult for women to obtain employment with Affinity and/or to retain their jobs at fair compensation. Zeid and Sloan also often made comments about Sloan "having sex with [H.]", a compounding pharmacy representative, in exchange for free prescription medications.

(R. 49-1, PageID# 1821, Bierman Decl. at ¶21 ).[4]

During her deposition, Plaintiff testified that:

> [Defendants] Brian [Zeid] and Jerry [Sloan] had falsified documents that they submitted to their insurance company, so their medical malpractice for the providers that we had was invalid. It came to our attention. I protested and didn't want anything to do with it; they were processing illegal controlled substance prescriptions to their own pharmacy, as well as external pharmacies. I refused to process those types of prescriptions or have anything to do with them; they had submitted falsified documents to obtain government PPP loans, didn't want anything to do with that….

(R. 39-1, PageID# 969, Bierman Depo. at 108).

Plaintiff's declaration states that Defendant Zeid "indicated that his reasons for terminating her" included the following: (1) her objections to sex and gender discrimination; (2) her objections to unfair and illegal pay and compensation practices, (3) her objections to improper

---

[4] Defendants' request to have Bierman's declaration stricken pursuant to the sham affidavit rule (R, 51) is rejected, as Defendants fail to identify material contradictions between her deposition testimony and her declaration. The fact that the declaration contains additional material that did not arise during her deposition is not a basis, standing alone, for striking the declaration.

4

and illegal practices regarding the processing, distribution, and administration of controlled substances; and (4) her other complaints concerning questionable and potentially illegal business practices such as "fraudulent practices regarding the procurement of insurance, engaging in insurance fraud, and improper and illegal practices regarding the dissemination of confidential and private medical records of patients." (R. 49-1, PageID# 1823, Bierman Decl. at ¶24).

### III. Summary Judgment Standard

Summary judgment is appropriate only if the moving party demonstrates there is no genuine dispute of material fact on an issue that would entitle the movant to judgment as a matter of law. Fed.R.Civ.P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the non-movant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is only genuine, however, if a reasonable jury could resolve the dispute and return a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV. Law and Analysis

**A. Counts One through Three: Wage Claims under FLSA, OMFWSA, and OPPA**

Although Defendants' arguments lack any meaningful organization and are difficult to follow, all parties agree that Counts One through Three can be analyzed together. (R. 37, PageID# 515; R. 49, PageID# 1800, n. 8).

Pursuant to O.R.C. § 4111.03(A), "an employer shall pay an employee for overtime at a

wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the 'Fair Labor Standards Act of 1938 ….'" The Sixth Circuit Court of Appeals has observed that "[b]ecause the FLSA and the OMFWSA have the same overtime requirements, the outcomes will be the same and the claims can be evaluated together." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385 (6th Cir. 2016); *accord Duncan-Watts v. Nestle USA, Inc.*, 2020 U.S. Dist. LEXIS 18647, at *14-15 (N.D. Ohio Feb. 5, 2020) ("under the express direction of O.R.C. § 4111.03, overtime claims brought under the OMFWSA are evaluated in the same manner as claims brought under Section 7 of the FLSA") (Gaughan, J.)

With respect to Plaintiff's FLSA, OMFWSA, and OPPA claims, Defendant's sole argument is that Plaintiff was an "exempt" employee, because she "made an agreement with the Defendants to be paid by salary and commission…." (R. 37, PageID# 525). Since 2004, "employment agreements are no longer the relevant starting point for whether an employee is paid on a salary basis." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 848 (6th Cir. 2012) (citations omitted).

> An employer may raise a plaintiff's status as an exempt employee as an affirmative defense to claims brought under the FLSA. *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007). Exemptions, however, "'are to be narrowly construed against the employers seeking to assert them.'" *Id*. (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960)). **The employer bears the burden of establishing the affirmative defense by a preponderance of the evidence**, and the employer satisfies this burden only by providing "clear and affirmative evidence that the employee meets every requirement of an exemption." *Id*. (internal quotation marks omitted).

*Orton*, 668 F.3d at 846-47 (emphasis added); *accord Hodges v. Salvanalle, Inc.*, No. 1:12 CV

2851, 2014 WL 584756, at *9 (N.D. Ohio Feb. 12, 2014).

While 29 U.S.C. § 213 sets forth a list of exemptions from the minimum wage and maximum hour requirements of the FLSA, it is not clear which exemption Defendants believe apply. Further, Defendants' brief in support of its motion contains no argument, nor does it identify any facts, that would allow the court to conclude that they have satisfied their burden by a preponderance of evidence. It is well settled that where, as here, issues are "'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation,' we consider them forfeited." *Porter v. Bondi*, 127 F.4th 993, 999 (6th Cir. 2025) (*quoting McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones"), *cert. denied*, 523 U.S. 1050, 118 S. Ct. 1370, 140 L. Ed. 2d 518 (1998); *Kennedy v. Comm'r of Soc. Sec.*, 87 Fed. App'x 464, 466 (6th Cir. 2003) (same) (*citing United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument).

As Defendants have failed to identify any facts that would foreclose Plaintiff's wage claims in Counts One through Three, Defendants' motion for summary judgment is denied with respect to those claims.

**B.     Counts Four Through Seven: Numerosity Requirements for Title VII and O.R.C. § 4112 Claims**

Defendants assert they are entitled to summary judgment because Plaintiff's employer, Defendant APN, employed only two individuals. (R. 37, PageID# 516, 526; R. 52, PageID# 2484). An employer is not subject to liability under Title VII unless it employs at least fifteen or more "in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). The numerosity threshold is an element of the plaintiff's claim, not a

jurisdictional requirement. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 504 (2006). O.R.C. § 4112.01(A)(2) defines an "Employer" under the statute, as "any political subdivision of the state, or a person **employing four or more persons within the state**, and any agent of the state, political subdivision, or person." (emphasis added).

Plaintiff's brief in opposition does not directly challenge the assertion that she was employed directly by Defendant APN or that APN had only two employees as reflected in its first quarterly tax return filing for 2021. (R. 49 at PageID# 1809-1811). Instead, Plaintiff asserts that the three LLC Defendants' employees should be aggregated, which would surpass the respective numerosity thresholds. *Id*.

The Sixth Circuit has indeed recognized various doctrines that allow a corporate defendant, who does not directly employ a plaintiff, to remain liable for purposes of employment discrimination claims.

> [C]ourts have fashioned various doctrines by which a defendant that does not directly employ a plaintiff may still be considered an "employer" under those statutes. In one approach, courts examine whether two entities are so interrelated that they may be considered a "single employer" or an "integrated enterprise." In another approach, courts consider whether one defendant has control over another company's employees sufficient to show that the two companies are acting as a "joint employer" of those employees. A third approach examines whether the person or entity that took the allegedly illegal employment action was acting as the agent of another company, which may then be held liable as the plaintiffs' employer.

*See Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997). In determining whether two or more entities should be treated as a single employer, courts examine the following four factors: "(1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and

financial control." *Swallows*, 128 F.3d at 994 ("No single factor is individually conclusive, but all four factors need not be satisfied in every case.") (citations omitted) (*citing York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir. 1982)). Control over labor relations is a central concern. *Id*.

It is a plaintiff's burden to show that employees among various entities can be aggregated under the single-employer doctrine. *See, e.g.*, *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 495 (6th Cir. 2011). As another district court in this Circuit explained:

> To make out a prima facie case of either... discrimination or retaliatory termination under Title VII, a plaintiff must first prove the defendant was h[is] employer." *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1225 (10th Cir. 2014); *see Tipton v. Northrup Grumman Corp*., 242 Fed. Appx. 187, 190 (5th Cir. 2007) (stating that plaintiffs have the "burden of coming forth with 'specific facts' " to establish that the parent company is an employer); *Sanford*, 449 Fed. Appx. at 495 (observing that for purposes of satisfying the numerosity threshold for employer liability under Title VII, the employee has the burden of establishing single-employer doctrine).

*Passmore v. Mapco Express, Inc.*, 447 F. Supp. 3d 654, 664 (M.D. Tenn. 2017).

Plaintiff has asserted that the other "Affinity Entities" can be aggregated to reach the numerosity requirement, because Defendants Core and AWH are a single or joint employer with Plaintiff's actual employer Defendant APN. (R. 49, PageID# 1810). Plaintiff falls well short of carrying her burden, however, as Plaintiff's argument is largely conclusory. While Plaintiff identifies the correct legal standards from *Swallows* and *Sanford*, the actual argument as to why the Court should consider the various entities as a single employer amounts to two sentences: "Affinity's owners 'maintained all rights for hiring and firing and compensation' across all Affinity Entities and were the employers of Affinity's employees. Zeid Depo. 9-30-2022 AM Session, at 41. The Affinity Entities also rely on one another, and their activities are interrelated." (R. 49, PageID# 1810).

First, the latter sentence is entirely conclusory, and fails to point to any evidence that is capable of satisfying any of the four aforementioned factors. Second, Plaintiff's quote from the deposition of Defendant Zeid is misleading, as the deposition questioning related to Defendant APN, and not "all Affinity Entities" as Plaintiff suggests. (R. 49-5, PageID# 1945, Zeid Depo. 9-30-2022 AM Session, at 41). Finally, the mere fact that Defendants Sloan and Zeid may have owned all three LLCs is not dispositive of the issue without more.

In *Rittmeyer v. Advance Bancorp, Inc.*, 868 F. Supp. 1017, 1024 (N.D. Ill. 1994), a district court declined to find two entities constituted a single employer for the purposes of an age discrimination claim based solely on common ownership. A Circuit Court of Appeals has found that "[u]nlike when a parent and its subsidiary are viewed as one corporation because the parent controls the personnel decisions of the subsidiary, the fact two corporations share the same owner does not, in and of itself, tend to show that one of these corporations controls the personnel decisions of the other. Hence, those two corporations do not necessarily constitute a single employer subject to the ADEA." *Rogers v. Sugar Tree Prods., Inc.*, 7 F.3d 577, 583 (7th Cir. 1993), *abrogated by Papa v. Katy Indus., Inc.*, 166 F.3d 937 (7th Cir. 1999);[5] *see also Dewey v. PTT Telecom Netherlands, U.S., Inc.*, 1995 WL 425005, at *3 (S.D.N.Y. July 19, 1995) ("common ownership alone is insufficient to establish application of the single employer doctrine"); *Woodland v. Viacom, Inc.*, 569 F. Supp. 2d 83, 90 (D.D.C. 2008) (finding plaintiff failed "to meet her burden … of the 'single employer' test" because she submitted no evidence to

---

[5] *Papa v. Katy Industries* held that an employer may not invoke the numerosity exemption to Title VII, ADA, or ADEA when: (1) conditions are present for "piercing the corporate veil," (2) an employer has split itself for express purpose of avoiding discrimination liability, or (3) a parent corporation directed the discriminatory act at issue." 166 F.3d 937. Plaintiff has not raised any such argument or pointed to any evidence suggesting these conditions are present herein.

establish any genuine issue of material fact regarding whether defendant exercised financial control over her employer and "[c]ommon ownership alone is insufficient.")

As stated above, a party cannot raise an argument in the most skeletal way, leaving it to the court to put flesh on its bones. It is not this Court's function to glean the record for evidence to support Plaintiff's conclusory assertion that the Defendants should be treated as a single employer. Plaintiff has failed to satisfy her burden, and the uncontroverted evidence remains that Defendant APN, Plaintiff's employer, had only two employees. Therefore, summary judgment is granted in Defendants' favor with respect to Counts Four through Seven.

**C. Count Eight: Wrongful Discharge**

Defendants' arguments in favor of summary judgement with respect to the wrongful discharge claim in Count Eight are not altogether clear. Defendants assert there is no evidence she was fired because of a sexual harassment retaliation claim (R. 37, PageID# 528), but ignore the above cited evidence, if credited by a finder of fact, may be evidence of a hostile work environment. Defendants also blankly assert that "[t]here is no evidence submitted by Plaintiff that [she] was fired nor the public policy of Ohio placed in jeopardy by the Defendant because she allegedly complained about a HIPPA matter, insurance fraud, or handling of controlled substances." *Id*.

"The traditional rule in Ohio and elsewhere is that a general or indefinite hiring is terminable at the will of either party, for any cause, no cause or even in gross or reckless disregard of any employee's rights, and a discharge without cause does not give rise to an action for damages." *Collins v. Rizkana*, 1995-Ohio-135, 73 Ohio St. 3d 65, 67, 652 N.E.2d 653, 656 (Ohio 1995). In *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (Ohio 1990), the Ohio Supreme Court created "an exception to the employment-at-

will doctrine" where an employee is discharged in violation of a statute. *Collins*, 652 N.E.2d at 656. *Collins* further recognized an action may lie for a violation of public policy as well, setting forth the following elements of such a claim: (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). *Collins*, 652 N.E.2d at 657–58.

Defendants' brief in support of summary judgment argues that "the trial issue is whether the Plaintiff was fired because her continued employment was conditioned on being a involuntary participant in illegal act directly or by acquiescense [sic]." (R. 37, PageID# 528). Defendants' reply brief in support of summary judgment concedes that Plaintiff's *Greeley* claim "is as a legal matter actionable as an alternative form of relief for sex discrimination in Ohio courts where the Plaintiff cannot meet employee numerosity jurisdictional grounds under RC 4112.02." (R. 52, PageID# 2493). Nevertheless, Defendants assert there is "no evidence" that Plaintiff was the victim of sex discrimination. *Id*. Defendants' general suggestion that numerous cases have been decided by the Ohio Supreme Court and Sixth Circuit Court of Appeals concerning public policy tort claims (R. 52, PageID# 2493) lacks citation and does not meaningfully explain why Plaintiff's claims cannot withstand summary judgment.

Viewing the facts in the light most favorable to Plaintiff as the non-moving party, Ohio has a clear public policy against sexual harassment, discrimination and/or retaliation; and fraudulent billing practices would also arguably constitute a violation of public policy. Plaintiff has offered

12

sworn testimony that she complained of such practices to Defendants, and that Defendant Zeid told her she was fired for making these objections. Permitting dismissal under such circumstances would undoubtedly jeopardize the public policy. Whether Plaintiff's dismissal was indeed motivated by conduct related to the public policy—the causation element— could be inferred by the trier of fact based on the circumstances of her termination. Finally, Plaintiff has offered testimony that she would have been promoted but for the resistance of male employees to a female manager, and that she was told she was being let go for the objections she raised.

Whether Plaintiff's testimony is credible is ultimately an issue reserved to a trier of fact, and is not an appropriate consideration for the Court at the summary judgment stage. As such, Defendants' motion for summary judgment with respect to Count Eight is denied.

### V. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (R. 37) is hereby GRANTED in part and DENIED in part. Specifically, summary judgment is DENIED with respect to Counts One through Three and Count Eight of Plaintiff's Amended Complaint. Summary judgment is GRANTED with respect to Counts Four through Seven and they are dismissed.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: June 17, 2025